[Cite as *State v. Sanchez*, 2016-Ohio-3167.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103078

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LUIS SANCHEZ

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575810-A

**BEFORE:** Laster Mays, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**    May 26, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Public Defender

By:   Cullen Sweeney
Cuyahoga County Public Defender
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   John D. Kirkland
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Luis Sanchez ("Sanchez"), appeals his jury trial conviction for possession of cocaine. We reverse and remand to the trial court.

{¶2} Sanchez was charged in a three-count indictment with drug trafficking (cocaine), in violation of R.C. 2925.03(A)(2), a first-degree felony; drug possession (cocaine), in violation of R.C. 2925.11(A), a first-degree felony; and drug possession (oxycodone and acetaminophen), in violation of R.C. 2925.11(A), a fifth-degree felony. At the close of the state's case, the trial court dismissed the possession of oxycodone and acetaminophen charge. At the close of trial, the jury found Sanchez not guilty of drug trafficking, but guilty of possession of cocaine. The trial court then sentenced Sanchez to three years in prison along with a $10,000 fine.

{¶3} After a review of the record, we affirm the trial court's decision to deny the motion for judgment of acquittal on Sanchez's cocaine possession, but find that Sanchez was denied the effective assistance of counsel, reverse his conviction for drug possession and remand for further proceedings. Sanchez assigns three assignments of error for our review.

> I. The trial court erred in denying Sanchez's Rule 29 motion for judgment of acquittal on his cocaine possession charge.
>
> II. Sanchez was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his attorney failed to litigate a motion to suppress illegally obtained evidence.

III.   Sanchez was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his attorney failed to file an indigency affidavit to waive the mandatory fine.

We will address the second assignment of error because it is dispositive of the case.

## I.     Facts

{¶4} The owner of the Illusions Sports Bar ("Bar"), John Calvillo ("Calvillo"), observed two males going into the Bar's restroom.   Calvillo testified that he followed them, opened the restroom door, and saw Sanchez with a bag of white substance in his hand. Calvillo told the men to leave his Bar.   Calvillo followed them to the exit and when the men approached the front door, Sanchez called Calvillo a "fake a** bi**h." (Tr. 228.)   To which Calvillo replied "you'll see who the fake a** bi**h is."   (Tr. 229.) Calvillo testified that because Sanchez decided to "run his mouth," he decided to call the police.   Calvillo placed a call to Officer Sistek's ("Sistek") personal cell phone while he continued to follow Sanchez across the street to a parking lot.   Calvillo testified that he saw Sanchez go to the passenger door of the vehicle, lean in, shut the door, and walk away.

{¶5} Once Sistek arrived, Calvillo told him that "I caught this punk in the bathroom.   It looks like he has a big bag of dope on him possibly cocaine."   (Tr. 228.) Sistek handcuffed Sanchez, searched him, and placed him in the police car.   Sistek found nothing on Sanchez's person.   Sistek then searched the car.   He testified that he found a bag of pills, marijuana, and the suspected cocaine on the passenger side of Sanchez's vehicle.

{¶6} At trial, Sanchez's fianc_e, Patricia Valentin ("Valentin") testified that the car the drugs were found in was hers and that she lent the car to Anthony Santiago ("Santiago"). Santiago was the other man that Sanchez was with the night of the incident in question. At the time of the trial, Santiago was incarcerated and the police never interviewed or questioned him.

{¶7} At the conclusion of the trial Sanchez was found not guilty of drug trafficking but guilty of possession of cocaine. He was sentenced to three years in prison and ordered to pay a $10,000 fine. As a result he has filed this timely appeal.

## II. Ineffective Assistance of Counsel

{¶8} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

{¶9} Sanchez contends that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his attorney failed to litigate a motion to suppress illegally obtained evidence and failed to file an indigency affidavit to waive the

mandatory fine.

{¶10} To establish ineffective assistance of counsel for failure to file a motion to suppress, the defendant must prove that there was a basis to suppress the evidence in question. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35, citing *State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525, ¶ 11. Similarly, failure to file a motion to suppress does not necessarily constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted." *State v. Kirk*, 8th Dist. Cuyahoga Nos. 95260 and 95261, 2011-Ohio-1687, ¶ 46. Therefore, we must determine if the motion to suppress the drugs would have been successful.

{¶11} Sanchez argues that his Fourth Amendment protection against unreasonable searches and seizure was violated when Sistek searched and arrested him without a warrant and the existence of probable cause. He also extends this argument to the vehicle that was searched and seized by the police. "In determining whether a law enforcement officer possessed probable cause to conduct a search of the defendant, the appellate court reviews the totality of the circumstances known to the officer at the time of the search." *State v. White*, 8th Dist. Cuyahoga No. 100624, 2014-Ohio-4202, ¶ 24. "The Fourth Amendment to the United States Constitution and Ohio Constitution, Article I, Section 14 guarantee the right to be free from unreasonable searches and seizures." *State v. Lumbus*, 8th Dist. Cuyahoga No. 102273, 2016-Ohio-380, ¶ 13.

{¶12} When Sistek arrived at the parking lot where Sanchez and Calvillo were located, according to Sistek's testimony, he "handcuffed and detained [Sanchez]," and placed him in his squad car. Sanchez was not free to leave the scene because he was handcuffed and sitting in the back of Sistek's police vehicle. (Tr. 252.) "R.C. 2921.01(E) defines 'detention' to mean, among other things, 'arrest.'" *State v. Booker*, 8th Dist. Cuyahoga No. 73960, 1999 Ohio App. LEXIS 2616 (June 10, 1999). "Arrest means that a person is stopped. He's stopped to be held, to answer for some sort of an accusation, whatever it might be, whether it's a traffic stop or whatever else. When a person is stopped, a person is technically under arrest." *State v. Booker,* 8th Dist. Cuyahoga No. 73960, 1999 Ohio App. LEXIS 2616 (June 10, 1999). Because Sanchez was stopped, detained, and handcuffed, Sistek had technically arrested him.

> Probable cause to arrest is a requirement of the Fourth Amendment to the United States Constitution binding upon the individual states through the Fourteenth Amendment. Probable cause exists where the facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. An appellate court must therefore determine whether the facts available at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed.

*State v. Dumas*, 8th Dist. Cuyahoga No. 89070, 2007-Ohio-5724, ¶ 24.

{¶13} "To have probable cause, the arresting officer must have sufficient information, derived from a reasonably trustworthy source, to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused." *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).

{¶14} Our current case involves an identified citizen informant. Of the three classes of informants (the anonymous informant, an informant from the criminal world who has provided previous reliable tips, and an identified citizen informant), the courts have always credited the identified citizen informant with greater reliability. *Maumee v. Weisner*, 87 Ohio St.3d 295, 720 N.E.2d 507 (1999) citing *Chagrin Falls v. Colubris*, 8th Dist. Cuyahoga No. 101197, 2014-Ohio-5340, ¶ 15. The Second District Court of Appeals held that "[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it an indicia of reliability and is presumed to be reliable." *State v. Carstensen*, 2d Dist. Miami No. 91-CA-13, 1991 Ohio App. LEXIS 6116 (Dec. 18, 1991), citing *State v. Cisternino*, 8th Dist. Cuyahoga No. 94674, 2010-Ohio-6027, ¶ 15.

{¶15} When Sistek arrived at the bar, Calvillo informed him that he personally observed Sanchez in what appeared to be criminal conduct. Additionally, Calvillo stated that he called Sistek because Sanchez talked back to him. The Ohio Supreme Court has stated that the "informant's motivation supports the reliability of his tip." *Maumee*, 87 Ohio St.3d 295, 302, 1999-Ohio-68, 720 N.E.2d 507. Reasonable suspicion is dependent upon both the content of the information provided and its degree of reliability. Both the quantity of information available and its quality must be examined under a totality of circumstances approach. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), citing *State v. Melvin*, 8th Dist. Cuyahoga No. 88611, 2007-Ohio-3779, ¶ 18.

{¶16} Under the totality of the circumstances, Sistek was called to the bar based on Calvillo's observations. Sistek detained Sanchez and searched Sanchez finding nothing. Because Calvillo's degree of reliability was lessened because of his motivation to retaliate against Sanchez for his vulgar name calling, Sistek was to stop at the investigatory search of Sanchez's person. Sistek did not find any drugs on Sanchez's person, so there was not probable cause to search the vehicle. We find that Sistek's warrantless search was not to extend to Sanchez's vehicle.

{¶17} However, Sistek did search Sanchez's vehicle. Since Sanchez was the passenger of the vehicle, it must be determined if Sanchez had standing to challenge the search. Generally the law states that because the vehicle was not titled in the defendant's name, he lacks standing to challenge whether an officer had probable cause to search the vehicle. *State v. Crum*, 8th Dist. Cuyahoga No. 61803, 1993 Ohio App. LEXIS 1554 (Mar. 18, 1993). However, Valentin, Sanchez's fiancée testified that Sanchez lent the car to Santiago. (Tr. 294.) Valentin also testified that she could not remember when she and Sanchez purchased the car. (Tr. 297.) His testimony demonstrated that they (Valentin and Sanchez) purchased the car together. Although the car was titled in Valentin's name, Sanchez clearly had permission to use the car, operate the car as an owner, and even lend the car to his friend.

> In *State v. Carter*, 69 Ohio St. 3d 57, 630 N.E.2d 355 (1994), the Ohio Supreme Court held that an individual who is in lawful possession of a vehicle, although not the titled owner, does possess a legitimate expectation of privacy in the vehicle searched if he or she can demonstrate that the owner gave permission to use the vehicle.

*State v. Robinson*, 8th Dist. Cuyahoga No. 77981, 2001 Ohio App. LEXIS 3096 (July 12, 2001).

{¶18} Clearly Sanchez had permission to use the vehicle and that permission did not end with his lending it to his friend. The issue of standing to challenge probable cause of a search is not solely about ownership, but about expectation of privacy. "Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." *State v. Brooks*, 12th Dist. Preble Nos. CA99-01-001 and CA99-01-002, 1999 Ohio App. LEXIS 5716 (Dec. 6, 1999).

{¶19} The court in *Robinson* ruled that even though the defendant had the keys to the car, the fact that he denied ownership of the vehicle demonstrated a lack of possesory interest or a reasonable expectation of privacy. However the facts in *Robinson* can be distinguished from the facts in our case. The court in *Robinson* decided that because defendant could not show that he had permission to use the vehicle, he lacked standing to challenge the search of the vehicle. Additionally, the *Robinson* court ruled that "one who illegally possesses or controls a vehicle does not have standing to challenge a search of the vehicle because he does not have a legitimate expectation of privacy therein." *Robinson* at 6. Neither is the case here. Sanchez did not illegally possess the vehicle and he had permission to use the vehicle per the testimony of his fiancée.

**{¶20}** "Generally, a warrantless search conducted without probable cause violates the Fourth Amendment, unless there is consent to the search." *Lumbus,* 8th Dist. Cuyahoga No. 102273, 2016-Ohio-380, ¶ 63. However, "police officers may conduct warrantless searches to some extent as an incident to a proper arrest." *State v. McKiry*, 8th Dist. Cuyahoga No. 88446, 2007-Ohio-2762, ¶ 14.

**{¶21}** Sistek searched Sanchez's car without a warrant.

> Under the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband. Courts define probable cause in the context of an automobile search as a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction. Accordingly, the determination of probable cause is fact-dependent and turns on what the officer knew at the time he made the stop and/or search.

*State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, _ 17. At the moment of the initial search, finding nothing on Sanchez, Sistek had no probable cause to arrest Sanchez. Sanchez did not give consent to search the vehicle. Based on Calvillo's information, Sistek decided to search Sanchez's vehicle. Even though Calvillo did not see Sanchez place anything in the vehicle, Sistek searched the vehicle and found cocaine, marijuana, and oxycontin. Considering the circumstances known to Sistek, we can determine that he did not have probable cause to search Sanchez's vehicle.

**{¶22}** The drugs found in the car should not have been admitted into evidence because Sistek did not have probable cause to seize and search Sanchez's vehicle. "Where an arrest is not supported by probable cause, evidence obtained from the

defendant following arrest is subject to suppression." *Warrensville Hts. v. Thomas*, 8th Dist. Cuyahoga No. 78613, 2001 Ohio App. LEXIS 3724 (Aug. 23, 2001).

> Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. Rather, the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made. Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.

*State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28.

From the record, it appears that the motion to suppress would have had a reasonable probability of success. Thus, we find that the trial counsel's performance was deficient in not filing a motion to suppress. The deficient performance also prejudiced Sanchez, so as to deprive him of a fair trial. The appellant's second assignment of error is sustained.

{¶23} The judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that the appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellant Procedure.

_____
ANITA LASTER MAYS, JUDGE

MELODY J. STEWART, P.J., CONCURS IN JUDGMENT ONLY;
SEAN C. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION
SEAN C. GALLAGHER, J., DISSENTING:

{¶24} I respectfully dissent. Sanchez lacked standing to contest the search of a vehicle. As a result, it cannot be said that Sanchez's trial counsel was deficient for failing to file a motion to suppress. Further, I would overrule Sanchez's remaining assignments of error and affirm the conviction.

{¶25} Sanchez advances two claims of ineffective assistance of counsel: (1) that his retained trial counsel should have filed a motion to suppress the cocaine found in the vehicle because it was a product of an unwarranted search, and (2) that his retained counsel should have filed an affidavit of indigency before sentencing. Neither claim has merit; therefore, both assignments of error should be overruled.

{¶26} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. The defendant has

the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶27} In this case, Sanchez first claims his attorney was deficient for failing to file a motion to suppress the drugs recovered through the search of the vehicle. In order to challenge the lawfulness of a search, the defendant must have standing. Standing is conferred through either ownership of or permission to operate a searched vehicle.[1] *State v. Carter*, 69 Ohio St.3d 57, 630 N.E.2d 355 (1994). In his appellate briefing, Sanchez discusses his initial detention at length. However, the lawfulness of his initial detention is irrelevant. The drugs were not found incident to the detention. The drugs were discovered as a product of the search of the car that occurred irrespective of that initial detention. The sole dispositive issue, with regard to the failure to file a motion to suppress, is whether Sanchez had standing to challenge the search of a vehicle he neither owned nor had permission to use on the night in question.

{¶28} "[A]n individual who is in lawful possession of a vehicle, although not the titled owner, does possess a legitimate expectation of privacy in the vehicle searched if he or she can demonstrate that the owner gave permission to use the vehicle." *State v. Robinson*, 8th Dist. Cuyahoga No. 77981, 2001 Ohio

---

[1] There is no evidence that Sanchez was a passenger in the searched vehicle at any time during the night of his arrest. In response to the question, "Do you know if [Sanchez] went with [his friend,] or was there another car?" Sanchez's fiancée answered, "I wasn't sure. Another car had just pulled up, another friend of his[,]" and she did not see how Sanchez left. Tr. 295:15-22. According to the evidence in the record, we are limited to determining whether Sanchez owned or had permission to use the vehicle.

App. LEXIS 3096, at 5-6 (July 12, 2001), citing *Carter*. In *Robinson*, the defendant disclaimed an interest in the car, but police officers found the car keys in the defendant's pocket at the time of the arrest. *Id.* Despite having possession of the car keys, the panel concluded that the defendant lacked standing to challenge the search of the vehicle. *Id.* Thus, the fact that he did not own the vehicle deprived the defendant of standing to challenge the search of the vehicle. *Id.* Without evidence of that valid possesory interest in the vehicle, the defendant lacks standing to contest the search. *Id.*

{¶29} It was undisputed that the car was titled to Sanchez's fiancée, and she never testified to giving Sanchez permission to use the vehicle. In fact, she had already lent it to Sanchez's friend, who not only had possession of the vehicle for a least a month preceding Sanchez's arrest, but was also actually driving the car on the night of the arrest. Of further importance, Sanchez's fiancée made clear that it was her decision whether to loan the car to someone. Tr. 294:16-21

> Knowing that [the friend] was just coming home from doing a couple years, [Sanchez] was trying to help him out. So he asked me, can we let him borrow the car so for him to get on his feet. [sic] I think everybody deserves a second chance, so *I told him* it was okay.
>
> * * *
>
> Q: So *you* lent [the friend] the car?
>
> A: Uh-huh.

(Emphasis added.) *Id.* at tr. 294:16-295:3. This testimony does not establish that Sanchez had permission to unilaterally loan the vehicle to another. To the contrary, it demonstrates he had to first ask his fiancée's permission. Sanchez emphasizes that he

asked, "can *we* let him borrow the car," as a basis to claim a shared interest. Her testifying to the way he phrased the request for permission is not indicative of shared ownership, especially considering the later clarification that she unilaterally decided to lend the car to a friend. Asking a "significant other" a favor with respect to that person's personal property does not create joint possession. It demonstrates the opposite.

{¶30} Sanchez's fiancée confusingly testified during cross-examination about the scope of Sanchez's interest in the car. Specifically, his fiancée testified that "I don't recall when *we* got that car." (Emphasis added.) Tr. 297:18-23. Sanchez claims this is evidence of a shared possesory interest in the vehicle. Because the ambiguous pronoun "we" was used for such key testimony, however, defense counsel followed up to confirm that the joint possessive was a reference to her and Sanchez. Sanchez's fiancée never confirmed that point and instead clarified that the car belonged to her. The entire dialogue is as follows:

A: I don't recall when we got that car.

Q: When you and [Sanchez] got the car?

A: No. You saying [sic] when we got together, me and Luis?

Q: Yeah, it was *your car*, correct?

A: Yes.

Q: *But* you were with [Sanchez] when *you had* that car, correct?

A: Yes.

(Emphasis added.) Tr. 297:24-298:4. Thus, when offered the opportunity to claim a shared interest, she responded by asking for clarification and then claimed sole possession and that she merely had the car during the time of her relationship with Sanchez. Tr. 298:1-2. The fiancée never testified to joint possession, that Sanchez had authority over the vehicle, or that Sanchez had permission to drive the vehicle on that particular night. Sanchez's reliance on the evidence in the record is misplaced.

{¶31} The search of that vehicle cannot be challenged by Sanchez because he was not the owner and lacked permission to use the vehicle. There is no evidence in the record establishing either of those two prerequisites to standing. Sanchez did not even possess a key to the car, and the facts of this case demonstrate far less of a possesory interest than the interest described in *Robinson*, 8th Dist. Cuyahoga No. 77981, 2001 Ohio App. LEXIS 3096, at 7, for which the panel concluded that the defendant lacked standing. *See also State v. Middleton*, 8th Dist. Cuyahoga No. 88327, 2007-Ohio-2227, ¶ 26 (defendant's presence near a vehicle that contained the defendant's personal items was not sufficient to demonstrate a possesory interest for the purpose of conferring standing to challenge the search); *United States v. Graham*, 119 F.Supp.2d 116, 123 (D.Conn.2000) (defendant had permission from the owner, who was riding as a passenger in the car during the stop, and therefore had a legitimate expectation of privacy to challenge the search). Sanchez lacked standing. As a result, filing a motion to suppress would have been futile.

{¶32} Turning to the final issue of ineffective assistance of counsel, even if we

presume a deficient performance, Sanchez is unable to demonstrate any prejudice from his trial counsel's failure to file an affidavit of indigency before the sentencing hearing. Appellate courts can determine that trial counsel was ineffective for failing to file an affidavit of indigency if the "record shows there is a reasonable probability the defendant would have been found indigent." *State v. Hubbard*, 8th Dist. Cuyahoga No. 99093, 2013-Ohio-1994, ¶ 9. There is no evidence in the record demonstrating that Sanchez would have been found indigent and unable to pay the fine.

{¶33} "First, a determination of indigency for purposes of retaining counsel is separate and distinct from a determination of indigency for purposes of paying a mandatory fine." The fact that Sanchez was declared indigent at his arraignment before retaining counsel is therefore not dispositive. *State v. Knox*, 115 Ohio App.3d 313, 317, 685 N.E.2d 304 (8th Dist.1996), citing *State v. Williams*, 105 Ohio App.3d 471, 483, 664 N.E.2d 576 (8th Dist.1995). Nevertheless, in light of the fact that Sanchez retained counsel and discharged his appointed counsel, Sanchez's summary conclusion that there was a reasonable probability of his being found indigent is without merit. *State v. Sibley*, 6th Dist. Erie No. E-10-043, 2011-Ohio-4861, ¶ 17 (advancing an ineffective assistance of counsel claim based on the failure to file an affidavit of indigency would be frivolous unless the record contains evidence supporting a finding that the defendant is indigent).

{¶34} There must be evidence in the record demonstrating indigence. *State v. Hicks*, 2d Dist. Montgomery No. 23757, 2010-Ohio-5521, ¶ 17 (defendant retained

counsel, and the record lacked any other evidence demonstrating indigence). Although the trial court ordered the transcript at the state's expense for the appeal at sentencing, that order was not expressly issued because of Sanchez's financial status or even upon his request. The order simply has no bearing on whether Sanchez can demonstrate his counsel was deficient for failing to file an affidavit prior to sentencing. The only information we have regarding Sanchez's financial status was his ability to retain counsel to defend his case. He evidently was of some means. There is no evidence in the record that Sanchez was indigent; and therefore, Sanchez has not demonstrated any prejudice stemming from the perceived failure to file the affidavit of indigency for the purpose of waiving the mandatory fine. His assignments of error, based on claims for ineffective assistance of counsel, should be overruled.

{¶35} And finally, Sanchez's last assignment of error, in which he claims the state lacked sufficient evidence linking him to the drugs recovered from the vehicle for the purpose of his possession conviction, is equally without merit. A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶36} Possession of illegal narcotics can be either constructive or actual. *State v. Wilson,* 8th Dist. Cuyahoga No. 102231, 2015-Ohio-4979, ¶ 10, citing *State v. Brown*, 8th Dist. Cuyahoga No. 87932, 2007-Ohio-527, ¶ 7. Actual possession is exactly as it sounds; the substance was within the offender's immediate physical possession. "Constructive possession is defined as knowingly exercising dominion and control over an object, even though that object may not be within one's immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). For example, in *Wilson*, constructive possession was demonstrated by the fact that the narcotics were found hidden in the light fixture of a hotel room occupied by multiple males, including the defendant. *Id.* at ¶ 13. When officers knocked on the door, the occupants jointly waited for over a minute before opening the door of the confined space. During that time, the officers heard the toilet being flushed. *Id.* The investigation revealed the defendant's DNA, among that of others, on the bags holding the narcotics. *Id.* at ¶ 15. Because of the defendant's proximity to the narcotics, in light of the limited space afforded by a single hotel room, and the DNA evidence linking him to the bags of narcotics, the court concluded that the conviction was based on sufficient evidence. *Id.* at ¶ 32; *see also State v. Hall*, 8th Dist. Cuyahoga No. 102789, 2016-Ohio-698, ¶ 15.

{¶37} It is undisputed that the substance recovered from the vehicle was identified as cocaine. The only remaining question focused on the degree of Sanchez's dominion and control over that substance.

{¶38} There is sufficient evidence of possession. Sanchez was seen with a bag containing a white substance, was seen walking to a car with that bag, and then was detained immediately after returning from the vehicle, at which time the bag had "disappeared." The witness never saw Sanchez discard anything, despite maintaining visual contact with him until police officers responded. The trier of fact could reasonably infer from those facts that the witness saw Sanchez, in the restroom, with the bag of cocaine actually found in the vehicle. The fact that Sanchez was carrying a bag of white powder, but that bag disappeared only after Sanchez walked away from the front passenger compartment where the cocaine was found, creates a reasonable presumption of possession. The first assignment of error should be overruled.

{¶39} I dissent and would affirm the conviction.